UNITED STATES DISTRICT COURT FOR THE
SOUTHERN DISTRICT OF FLORIDA
FORT PIERCE DIVISION

Case Number: 19-14153-CIV-MARTINEZ-MAYNARD

PR OVERSEAS BOATING, LTD.,

    Plaintiff,

vs.

THE TALARIA COMPANY, LLC d/b/a
THE HINCKLEY COMPANY,
and QUICK USA, INC.,

    Defendants.
_____/

## ORDER ON DEFENDANTS' MOTIONS FOR SUMMARY JUDGMENT

THIS CAUSE is before the Court on Defendant The Talaria Company, LLC d/b/a The Hinckley Company ("Hinckley")'s Motion for Summary Judgment, (ECF No. 109), and Quick USA, Inc. ("Quick USA")'s Motion for Summary Judgment, (ECF No. 101). Having considered the Motions for Summary Judgment, Responses (ECF Nos. 106 & 122), Replies (ECF Nos. 113 & 131), Statements and Opposition Statements of Undisputed Facts (ECF Nos. 100, 110, 123, 130, 132), the record, and be otherwise advised of the premises, the Court grants the Motions for Summary Judgment as stated herein.

**I.**     **BACKGROUND**[1]

Roger Martin is the owner of Plaintiff PR Overseas Boating, Ltd. ("PROB"), an entity organized under the laws of the British Virgin Islands. (Quick Statement of Material Facts ("Quick

---

[1] The facts are undisputed unless stated otherwise.

SMF") ¶¶ 1–2, ECF No. 100).[2] PROB holds title to a 63-foot yacht called the "Time Out." (Joint Statement of Undisputed Facts ("Joint SMF") ¶ 2, ECF No. 130). Martin used the Time Out for recreational purposes. (Dec. 16, 2021, Roger Martin Dep. ("Dec. 16, Martin Dep.") at 6:4–15, ECF No. 110-3).

In the fall of 2017, Martin brought the Time Out to Hinckley's facility in Stuart, Florida, to repair damages the Time Out sustained from Hurricane Irma. (Hinckley Statement of Material Facts ("Hinckley SMF") ¶ 2, ECF No. 100; Dec. 16, Martin Dep. at 15:11–17:13). Martin contracted with Seasport Yacht Services ("Seaport") to oversee the repairs that Hinckley was to perform on the Time Out. (Hinckley SMF ¶ 4). Captain Christopher Leyden owns and operates Seasport and oversaw the Time Out repairs. (Hinckley SMF ¶ 5; Dec. 17, 2021, Christopher Leyden Dep. ("Leyden Dep.") at 37:3–38:2, 41:5–16, 162:5–8, ECF No. 110-4). While the Time Out was at Hinckley's facility, Martin asked Leyden to acquire information regarding the potential installation of gyroscope stabilizers on the Time Out. (Hinckley SMF ¶ 7).

Randy Ward, Hinckley's representative, provided Martin and Leyden with information about gyroscope stabilizers manufactured by Quick S.p.A. ("Quick Italy"). (Hinckley SMF ¶ 9; PROB SMF H. ¶ 9; Dec. 15, 2021, Roger Martin Dep. ("Dec. 15, Martin Dep.") at 40:15–41:25). Leyden visited Quick Italy's facility in Italy, where he spoke with Quick Italy representatives about their stabilizers. (Hinckley SMF ¶ 11; PROB SMF H. ¶ 11). Quick Italy's stabilizers are operated by a driver box. (Hinckley SMF ¶ 10). Leyden expressed concerns that the Quick Italy stabilizers would not be compatible with the Time Out because the drivers were air-cooled and would be installed in the engine room, which could get hot and cause overheating. (Hinckley SMF ¶ 12; Leyden Dep. at 217:18–23, 219:12–14, 221:5–225:6, 245:9–22). Quick representatives reassured

---

[2] Hinckley does not dispute Quick USA's Statement of Material Facts. (*See* ECF No. 102).

2

Leyden that his concerns were unfounded. (Hinckley SMF ¶ 12; Mar. 14, 2022, Aff. of Christopher Leyden ("Aff. Leyden") ¶ 12, ECF No. 107-13). Ultimately, Martin directed Seaport to purchase two Quick Italy stabilizers, model number MC$^2$X19 (the "Quick Stabilizers").[3] (Hinckley SMF ¶ 13; Joint SMF ¶¶ 3, 6; Leyden Dep. at 238:3–239:23; Dec. 15, Martin Dep. at 59:13–62:23). Martin decided to purchase the Quick Stabilizers to provide stabilization, i.e. roll reduction, to the Time Out, which is the ordinary purchase for which stabilizers are used. (Joint SMF ¶ 12; Hinckley SMF ¶¶ 29–30; PROB Resp. H. ¶¶ 29–30; Dec. 16, Martin Dep. at 42:9–43:23; Leyden Dep. at 240:4–15)).

Quick USA is the wholesale distributor of Quick Italy products in the United States. (Quick SMF ¶ 8). Quick USA sold the Quick Stabilizers to Hinckley who then sold them to Seaport. (Joint SMF ¶¶ 3, 6; July 8, 2018, Vendor Invoice, ECF No. 100-3). Hinckley installed the Quick Stabilizers on the Time Out. (Joint SMF ¶ 10; Quick SMF ¶¶ 4–5, 9; Invoices, Ex. 1 to TAC at 16–38).

Quick Italy provided a written warranty for the Quick Stabilizers ("Warranty") (Joint SMF ¶ 4), which states that the Quick Stabilizers "are guaranteed for a period of 2 (two) years from the date of purchase of the product or 2000 hours of operation" and that the "warranty covers all manufacturing defaults." (ECF No. 100-2). It also stated that "[t]he holder of the warranty right is the buyer or the user of the product." (*Id.*).

The Quick Stabilizers overheated during their first sea trial. (Dec. 15, Martin Dep. at 65:13–66:2, 70:3–73:16; Mar. 11, 2022, Aff. of Roger Martin ("Aff. Martin") ¶ 22, ECF No. 107-12). Shortly after the sea trial, Martin observed the Quick Stabilizers spewing dark-gray dusk and sand and grew concerned they created a fire hazard. (Aff. Martin ¶ 22). PROB alleges it sustained

---

[3] The Court defines the Quick Stabilizers to include both the gyroscopes and drivers.

damages from the purchase, removal, and replacement of the defective Quick Stabilizers. (TAC ¶¶ 44–50, 57–58, 72). PROB asserts three claims in the operative complaint: (I) against Hinckley for breach of implied warranty of fitness for a particular purpose, under section 672.315, Florida Statutes; (II) against Hinckley for negligent installation of the Quick Stabilizers; and (III) against Quick USA for negligent misrepresentation. (TAC ¶¶ 36–72). Both Quick USA and Hinckley move for entry of summary judgment in their favor on all claims. (ECF Nos. 101 & 109). Those motions are ripe for the Court's review.

## II. **LEGAL STANDARD**

Summary judgment is appropriate only if the "movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is genuine if there is sufficient evidence such that a reasonable jury could return a verdict for either party. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Similarly, an issue is material if it may affect the outcome of the suit under governing law. *Id.* The moving party bears the burden of showing the absence of any genuine issue of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). At the summary judgment stage, courts must view the evidence in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Chapman v. Am. Cyanamid Co.*, 861 F.2d 1515, 1518 (11th Cir. 1988). That said, if the evidence advanced by the nonmoving party "is merely colorable, or is not significantly probative, then summary judgment may be granted." *Anderson*, 477 U.S. at 249–50 (citations omitted).

### III. DISCUSSION

#### A. Breach of Implied Warranty (Hinckley)

PROB asserts a claim against Hinckley for breach of implied warranty of fitness for a particular purpose, in violation of section 672.315, Florida Statutes. (TAC ¶¶ 36–50). PROB alleges that Hinckley represented to PROB that the Quick Stabilizers were fit for the particular purpose of stabilization and that Hinckley failed to deliver and install a product that was fit for that purpose. (*See* TAC ¶¶ 38–43). A warranty "arises where a seller has reason to know a particular purpose for which the goods are required and the buyer relies on the seller's skill or judgment to select or furnish suitable goods." *Royal Typewriter Co., Div. of Litton Business Systems, Inc. v. Xerographic Supplies Corp.*, 719 F.2d 1092, 1100 (11th Cir. 1983) (citing § 672.315, Fla. Stat.). "A 'particular purpose' differs from an ordinary purpose in that it envisages a specific use by the buyer which is peculiar to the nature of his business." *Id.* (concluding that an implied warranty of fitness for a particular purpose did not arise where the party used the at-issue machines for their ordinary purpose, that is, as copiers); *see also Smith v. Forest River, Inc.*, No. 19-14174, 2019 U.S. Dist. LEXIS 205661, at *3 (S.D. Fla. Nov. 25, 2019) (explaining that a particular purpose "means a use that is peculiar to the buyer and different from how the product ordinarily is used," and "thereby denotes an unusual or atypical form of use").

Here, Martin directed the purchase of the Quick Stabilizers to provide stabilization to the Time Out. (Joint SMF ¶ 12; Hinckley SMF ¶¶ 29–30; PROB Resp. H. ¶¶ 29–30; Dec. 16, Martin Dep. at 42:9–43:23; Leyden Dep. at 240:4–15)). Stabilization is the ordinary purpose for which Quick Stabilizers are used. (Joint SMF ¶ 12; Hinckley SMF ¶¶ 29–30; PROB Resp. H. ¶¶ 29–30). Because PROB intended for the Quick Stabilizers to be used for their ordinary purpose, judgment is entered in favor of Defendants on PROB's breach of implied warranty claim.

### B. Negligent Installation (Hinckley) & Negligent Misrepresentation (Quick)

PROB asserts a negligent installation claim against Hinckley, (TAC ¶¶ 51–58), and a negligent misrepresentation claim against Quick, (TAC ¶¶ 59–72). With respect to the negligent installation claim, PROB alleges that Hinckley breached its duty as an elite boatyard to exercise reasonable care when it failed to recognize that installing the Quick Stabilizers in Time Out's engine room would cause overheating that would render stabilization ineffective. (*See* TAC ¶¶ 51–58). As for the negligent misrepresentation claim, PROB alleges that Quick USA's agents misrepresented to PROB that the installation of the Quick Stabilizers would achieve the intended purpose of roll reduction on the Time Out without overheating. (*See* TAC ¶¶ 59–72). For both claims, PROB alleges damages from purchasing and installing the alleged defective product, removal costs, and replacement costs. (*See* TAC ¶¶ 57–58, 72).

Hinckley and Quick argue that the economic loss rule precludes PROB's negligence claims. (ECF No. 101 at 10; ECF No. 109 at 8–12). Under Florida law, "the economic loss rule is a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Tiara Condo. Ass'n v. Marsh & McLennan Co.*, 110 So. 3d 399, 401 (Fla. 2013). The rule precludes "recovery of economic damages in tort where there is no property damage or personal injury[.]" *Id.* at 404. The rule "developed to protect manufacturers from liability for economic damages caused by a defective product beyond those damages provided by warranty law." *Id.* at 403. There is no dispute that PROB seeks to recover only economic loss damages. *See Tiara*, 110 So. 3d at 401 ("We have defined economic loss as 'damages for inadequate value, costs of repair and replacement of the defective product, or consequent loss of profits—without any claim of personal injury or damage to other property.'") (citation omitted)).

6

PROB argues that the economic loss rule does not apply because it is a third-party beneficiary of the contract between Seaport, Hinckley, and Quick for sale of the Quick Stabilizers, and that because privity is a question of fact, the Court should deny summary judgment. (ECF No. 106 at 12; ECF No. 122 at 13). This argument is incorrect for two reasons. First, there is no third-party beneficiary "exception" to the economic loss doctrine. The economic loss doctrine applies equally to third-party beneficiaries as it does to contractual privities. *See Hoseline, Inc. v. U.S.A. Diversified Prods.*, 40 F.3d 1198, 1200 (11th Cir. 1994) ("[Plaintiff's] claim that the economic loss doctrine does not bar tort claims between parties who lack contractual privity is meritless[.]"); *see also Intercoastal Realty, Inc. v. Tracy*, 706 F. Supp. 2d 1325, 1332–33 (S.D. Fla. Apr. 16, 2020); *Lipton v. Intercept Payment Sols., Inc.*, No. 03-62040, 2005 U.S. Dist. LEXIS 51157, at *10–11 (S.D. Fla. Apr. 21, 2005) ("Florida law has established that the economic loss rule bars a negligence action in the context of a third-party beneficiary contract when the plaintiff/third-party beneficiary seeks to recover only economic losses.").

Second, there is no dispute that PROB is a beneficiary of the Quick Stabilizers Warranty (*See* Joint SMF ¶ 4). The Warranty provides that Quick Italy would guarantee "all manufacturing defaults" for "2 (two) years from the date of purchase of the product or 2000 hours of operation." (ECF No. 100-2). Further, that "[t]he holder of the warranty right is the buyer *or the user* of the product." (*Id.*) (emphasis added). PROB, as the owner of the Time Out for which the product was purchased, is the user of the product and a beneficiary of the Warranty.

As a beneficiary of the Warranty, PROB's negligence claims are barred by the economic loss doctrine because the subject matter of PROB's negligence claims is interwoven with the Warranty. Stated differently, PROB's negligence claims arise from the Quick Stabilizers overheating. Neither Hinckley nor Quick USA's conduct caused property damage or personal

injuries; rather, the Quick Stabilizers just did not work as intended. These claims sound in warranty, not tort. *See Premix-Marbletite Mfg. Corp. v. SKW Chems., Inc.*, 145 F. Supp. 2d 1348, 1359 (S.D. Fla. 2001) (granting summary judgment in favor of defendant where plaintiff's negligence claim was interwoven with the parties' agreement for the sale of defendant's product); *see also Aprigliano v. Am. Honda Motor Co.*, 979 F. Supp. 2d 1331, 1338 (S.D. Fla. 2013) (dismissing negligent misrepresentation claim because it "is dependent on the same fundamental allegations contained in the breach of warranty claim"); *Burns v. Winnebago Indus., Inc.*, No. 13-cv-1427, 2013 U.S. Dist. LEXIS 116377, at *6 (M.D. Fla. Aug. 16, 2013) (finding plaintiff's negligent misrepresentation claim barred by the economic loss doctrine where plaintiff's claims seek relief due to the inferior quality of the RV, which did not meet [plaintiff's] expectations due to the corrosion"). The fact that PROB does not assert a breach of express warranty claim does not preclude the application of the economic loss doctrine. *See McCutcheon v. Kidder, Peabody & Co.*, 938 F. Supp. 820, 823–24 (S.D. Fla. 1996) ("The case law does not indicate that either a claim or a basis for a claim of contractual breach must exist in order to invoke the economic loss rule."); *see also Santiago v. Nsi Ins. Grp.*, No. 05-22307, 2006 U.S. Dist. LEXIS 116153, at *43 n.21 (S.D. Fla. July 7, 2006) ("It is of no consequence that Plaintiff did not allege a claim for breach of contract; the economic loss rule applies because the subject matter of the parties' agreement coincides with the subject matter of Plaintiff's negligence claim."). PROB's negligence claims are barred by the economic loss rule.

### IV. CONCLUSION

For the foregoing reasons, it is hereby **ORDERED AND ADJUDGED** that

1. Hinckley's Motion for Summary Judgment, (ECF No. 109), and Quick's Motion for Summary Judgment, (ECF No. 101), are **GRANTED** for the reasons set forth in this Order.

2. The Clerk of Court is **DIRECTED** to **CLOSE** this case and **DENY** all pending motions as **MOOT**.

3. The Court will enter final judgment by separate order, pursuant to Federal Rule of Civil Procedure 58.

**DONE AND ORDERED** in Chambers at Miami, Florida, this 27 day of April, 2022.

_____
JOSE E. MARTINEZ
UNITED STATES DISTRICT JUDGE

Copies provided to:
Magistrate Judge Maynard
All Counsel of Record